The next case on our oral argument calendar today is number 21945, Raja v. Burns. Thank you, Your Honor. Good morning, and may it please the Court. I must admit to some reluctance in bringing this appeal because it is incensed on my own behalf. But at the end, I thought it important to bring it because the granting of attorneys' fees to prevailing plaintiffs in civil rights cases is an important part of the enforcement of civil rights laws. If that's the case, it's important that these fees be awarded fairly. And while the District Court surely has a discretion in awarding fees, the scope of that discretion is constrained by legal principles. In this case, the District Court applied incorrect legal standards and abused its discretion. This is a case where the plaintiff achieved an excellent result, everything he intended to achieve in the case. It is a case where a single lawyer represented the plaintiff from beginning to end. It is a case where the plaintiff was able to move for and indeed win summary judgment without any formal discovery. It is a case where none of the reported deficiencies of the billing records merit any substantial reduction from the lodestar, much less a 40% rejection across the board. Mr. Ackman, part of the reason the District Court gave for reducing the fees, and let me just say to begin with that I agree that it's very important for counsel to take these cases and be adequately compensated under the statute. But what the District Court said in part was that only partial success was obtained, that the broad argument you made that the oath rules are unconstitutionally vague differed substantially from the due process claim in which you ultimately prevailed. The fees were in the order of $90,000, the settlement was about $20,000, and maybe that or some of the charges. Can you address the partial success argument that the District Court made? Addressing each of these points, first, yes, the monetary settlement was $20,000, but that's not all he achieved. He also achieved reinstatement. Mr. Roger was, they wanted to disbar him, he was Was the reinstatement something that happened before the OATH, or was that part of the suit for which we're, about which we're talking? That is, I understood the suit to be talking about the improper procedures that were applied, that it was a question of procedural due process, not the question of the merits of the suspension, that that was something else. And I thought our case has said that you can only recover what was before the agency if it was necessary, tightly connected to what was in the court case. Well, it was tightly connected, Your Honor, because Mr. Roger was seeking, his initial motion was on due process. Now, to answer the prior question, the idea that his success was only partial is wrong, both factually and legally. His goal in this case was to, in the overall case, was to achieve reinstatement, which he did, to receive money damages for a lost income, which he did, and not to be disbarred, which he was not. Nothing, and none of the points of law that he lost on would have changed that. The result was everything he could, he wanted, and everything he sought. And it doesn't matter under Hensley and other cases, whether you lose certain legal points, as long as the result is good. And here, the result was excellent. I have a somewhat side question. The district court reduced the amount from 475 to 400, and did it in part because there wasn't total success. You haven't challenged that. I was a bit puzzled about the lack of total success coming up, both at the level of reducing the amount of the charges, and then again, at the end, in terms of the total amount. But I'm not sure I can take that. I can consider that, given that you haven't challenged the reduction from 475 to 400. Judge, respectfully, I don't think the reduction in the requested hourly rate was due to partial The court said several things, but one of the things they said was that that was part of that reason. And that struck me as being very odd, given what they then did at the end in reducing, which is what you've been talking about. But I'm not sure. You're telling me that that wasn't it, so I needn't worry about it. I don't think that was the reason. The reason we didn't challenge the rate on appeal was because we conceded that the rate that was ordered was within the range of the cases, what the cases allowed. And I don't think any of that has to do with the amount of success in the case. That has to do with what was ordered in other cases. Could you address the district court's assertion that because she and her ruling didn't rely on any of the evidence induced in the oath proceedings, that the oath proceedings were really segregable and shouldn't be considered in making a fee award here? I understood you to be arguing that all the facts were developed, the case was really developed in the administrative proceedings, and therefore the district court wouldn't have rendered the judgment here, in fact, absent that case development that was done in the administrative proceedings. The district court said, I didn't rely on any of that, so I need to exclude it. Well, it's hard. I cannot. I mean, the district court said what the district court said. But the fact is, we did cite oath hearing testimony extensively in our summary judgment papers, as well as documents that were received as a result of the oath case. So that evidence was there. You did cite all of those, but were they relevant to the basic argument that you were making? I think they were. That there was no reason for the government not to give a procedural way for you to attack this, because they could have done that at essentially no expense, and wasn't the key to your winning something that had really very little to do with the merits of the oath thing? No, Judge, I think that the oath case was fundamentally important to the summary judgment motion, because what the judge also said below is the facts we presented on summary judgment were known to us before the case even started. That was not completely true, even to the extent it is true. We moved based on those facts for a plenary injunction. That was denied. Then we moved based on, again, the similar set of facts, although supplemented by the oath case for summary judgment, and that was granted. I submit the only real difference in the two cases is that before in the plenary injunction motion, Raja was seen as a miscreant, as a dangerous person, as something of a villain, who was not known to the court. After the oath case, where Raja was reinstated. You mean that the first district judge ruled against him because he was a nasty fellow, rather than on the question of whether proper procedures were given? I wouldn't say it wasn't the issue of law, was it? Certainly not the issue of law, but before in the preliminary injunction motion, Mr. Raja faced charges from a respectable government official that he was dangerous to the court, that he had committed all these crimes, not crimes, but improper actions. And the oath case settled that in your... The oath case demonstrated that he did not to be suspended at all. He certainly should not be disbarred. It didn't demonstrate his innocence in all these charges, but they certainly didn't press it. And they were willing to reinstate him to the position he'd been in before. That was powerful evidence on summary judgment, that the entire case against him was kind of bogus. And therefore, it puts his entire case in a new light and was seen correctly at summary judgment based on probably a fairer assessment of who Raja was. Thank you. All right. You've reserved three minutes for rebuttal. We'll hear from Mr. DeSilvio. Good morning, your honors. May it please the court, Lorenzo DeSilvio on behalf of Appellees. Far from constituting an abuse of discretion, the district court's decisions in this case to exclude the oath hours and to reduce the remaining hours by 40% was in fact eminently reasonable. Consider what the district court was faced with. It had before it a request for attorney's fees for $90,000 based on 189 hours, which is roughly equivalent to five 40-hour work weeks, even though Raja had won on only a single claim based on evidence that he had before even coming to federal court and before attending the oath hearing. Even though he won in a simple procedural due process claim where the law is well established and the counsel he retained frequently litigates in this area, but he lost several other claims involving different theories, different relief, and different fact patterns. In addition, the overuse of block billing and vague or excessive entries impaired the district court's ability to accurately assess. Let me interrupt you just there if I may. So could you just describe what you mean as block billing? Is that anything over six minutes or is anything over an hour or anything over two hours with one description? What is it exactly? No, your honor. So I would draw the court's attention to page 210 of the joint appendix. That's where the time entries begin. If you look at the entries for March 6th and March 7th, they describe multiple tasks that Raja's counsel performed but differentiate the number of hours, whether they pertain to oath, whether they pertain to litigation. Other entries and in our brief, we say it's 30 out of 65 total entries use block billing. Well, could you please just give me a definition? Go ahead, Judge Calabresi, please go ahead. No, don't we have some cases that say that block billing is only wrong if there's something wrong with a block billing? Don't we have a relatively recent case from this court that suggests that block billing is all right unless there's some reason to think that the individual billings were wrong? So your honor, counsel to Mr. Ackman's statement during his presentation to the court, the parties are actually in unity about the standard applicable here because some district courts have said block billing no, some district courts said block billing okay. But what Mr. Ackman admits is that block, he says block billing is okay unless it impairs the district court's ability to assess whether a reasonable amount of fees are sought here. And that's precisely what the district court concluded here based on what it tabulated as 23 out of 51 entries using block billing. I believe the district court lopped off entries pertaining to oath and pertaining to this fees motion. Can I follow up? I'm looking at the page you directed us to. Yes, right. And I understand if I'm right that you're giving the examples of March 6th and 7th as examples of how it should be done. Of not block billing. Right, because they've provided. So I'm looking at March 8th and it says draft and edit response slash re-argument letter regarding cases raised by the court and confer with Roger regarding additional evidence rebutting charges. So there's two distinct things there. That's correct. Five hours. I'm just trying to understand how the fact that there are two distinct things really matters in terms of the court's ability to assess the reasonableness of that fee. Is there some amount for either of those two entries that would be excessive such that we need to break it down? I don't get the rationale. Well, your honor, that's precisely the issue because here some of those hours seem to pertain to the oath hearing. Some of those hours of those five hours seem to pertain to litigation. But the oath hearing had to be independently analyzed. And by my count, the magistrate judge said it was fewer than this. And I can draw the court's attention to the precise date so you can see if you agree. But there are actually eight days where there's work that doesn't differentiate between either litigation or oath. We just don't know whether this was a reasonable amount of fees based on the limited win in this action or whether it was based on things that were excluded, that should be excluded. That is an example of what my colleague was describing is block billing in which there is a sort of problem, which is that it might be masking things that shouldn't be included. But using the total number of dates for which there was block billing without doing the micro analysis of how many of those actually presented a problem strikes me as intention with the principle that block billing itself is not an inherent evil. It's only problematic when it undermines our ability to evaluate something else. So isn't the relevant number of block billing that we need to look at how many of the entries were actually problematic with respect to the possibility or the apparent obscuring of the difference between the work and the proceeding in the court case? So your honor, I certainly think that the district court could have done that here. But the question is whether having not done that constitutes an abuse of discretion. And our argument is that block billing in combination with vaguer excessive entries in combination with the partial win justified under the case law, the 40% haircut imposed here. 40% is still a dramatic reduction across the board. And there were only three entries identified as vague. And four is including some clerical tasks that might have been subject to lower fee. We had entries only from Mr. Ackman. And there was a favorable result achieved. 40% plus, as Judge Calabresi pointed out, the reduction in the per hour charge while within the reasonable range still with the same reason cited. It seems that this was kind of doubly punitive. So Judge Carney, I have two responses to your question. The first is that there were an undue number of vaguer excessive entries that in combination with the at least 40% entries that were block billed impaired the district court's ability. But just one second. You said an undue number. By my count, it was three entries were vague. So I can help you guide your analysis, your honor. So certainly there's the three entries prepped for oral argument. But the total is 6.5 hours. We don't know if the prep was related to the vagueness argument that he lost or the procedural due process argument that he won. In addition, there are 18 entries that use the term SJ or summary judgment. Of those entries, 10 of them constituting 50% of the total hours just say work on summary judgment, even though other entries said I'm doing the fact section or I'm researching vagueness or I'm focused on this. The fact that he used a more specific definition or description at one point to stand working on the fact session doesn't undercut the notion that preparing a summary judgment motion is a labor intensive task that involves both facts and law and that, you know, I'm not sure would necessarily provide the district court with a much better basis to say that for this 15 minute period, I thought about this, you know, aspect of it. Is it really unreasonable to kind of assign that kind of those numbers of hours to preparing a summary judgment motion and make a claim? So your honor, that leads me into my second response to your initial question, which is yes, what the district court did here was reasonable because we don't know whether all of those hours were spent on winning arguments or losing arguments. And here the posture of the case matters because as Judge Calabresi pointed out, both summarily suspended Raja and he rushed to court to try to enjoin that suspension before a hearing could take place. He said that the reduction was due to the fact that whatever happened at oath wasn't really that directly necessary to what he won. How much was it to partial success because he made, as everybody does, more than one claim and then wins on one? And how much was it to block billing? I mean, I'm having a little trouble figuring out what it was that the district court was basing finally the reduction that it made because some of these seem to me to make sense. I don't think practically that the oath opposing counsel to the contrary notwithstanding that what happened there was really relevant to what he won on. On the other hand, I'm not very sympathetic to the notion that because he brought three or four claims and won on one of them, the others should be discounted. And you should say, oh, he only won out with one out of four. That just never seems right in terms of an actual argument. So I'd like to get more of a handle on what it was that the district court actually did. So, Your Honor, my understanding of the district court's decision is first excluded all the oath hours and then it did a 40% haircut on the remaining hours based on a combination of the partial victory, the block billing, and the vaguer excessive entries. On the issue of partial victory, I strongly dispute Mr. Ackman's contention that he got all the relief that he wanted because he actually asserted even after winning, his suspension was resolved in a settlement where it was lifted after 35 days, no admission of wrongdoing, but he then went to federal court and filed a six-count complaint bringing up additional arguments besides his procedural due process one. Some sounded in, you actually can't even go after me because the oath rules are nebulously vague. That would have effectively barred any action in this area. He essentially said oaths actions were preempted by the city charter. He also said, and this would apply to any oath hearing, you can't adduce evidence from a witness who isn't compelled to attend. He lost all of those claims. He didn't get punitive damages. He just got $1 over $20,000. It's true that our circuit is a bit out of line with other circuits and is more sympathetic to your position about partial victories. Other circuits tend not to allow that reduction and we tend to more, but still, I have some problems when we figure out because people do make more arguments. And then how do you say how much of the time that was spent was on one rather than another when you're making a set of arguments together? So to answer your question, your honor, I certainly understand your concern. And as Judge Carney noted, it is important to strike a balance between incenting competent counsel to bring these types of claims, but not give a fee amount that would be unreasonable in light of the degree of excess. And here what the district court did, as it does all the time, is it looked at the time entries that counsel prepared. It assessed if Raja had met his burden to show that the amount of fees sought was reasonable under the circumstances. And it gave a thoughtful and detailed analysis why under the relevant of the total circumstances, $90,000 would be excessive in the facts of this case. All right. Thank you very much. We'll hear a rebuttal. Thank you. Mr. Ackman. Yes, Judge. First of all, I'm taking the various points that were made. First of all, there was no finding below that the amount in total was excessive, nor was there any finding the amount of clock building impaired the court's ability to determine the reasonableness of the hours built. Neither of those was part of the decision. And so I don't think you can say, and the idea that there's some courts that object to block billing is basically false. There may be an odd case here or there, but overwhelmingly the circuit courts in this district have said that block building is a normal and ordinary practice, which does not present a problem unless it masks other problems in the billing. And there were no problems found below here, and none that could be reasonably found on appeal either. Secondly, the counsel claimed that this was the law, the case, the point that Raja prevailed on was a well-established point of law. Well, that may be, and I hope it is well established, but in fact, he lost on a preliminary injunction motion. So I guess it wasn't well established enough to convince Judge Chen and the city fought it all the way on summary judgment. So I guess the city doesn't think it's well-established. The fact is Raja won on this point and under Hensley, it doesn't matter that he lost other points. Hensley says, where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation. The result is what matters. So as Judge Calabresi said, it's very common to bring multiple claims and it's common to lose on some and win on others. But as long as you win on the main one or one that gives you full relief, which is what happened here, you're the prevailing party and your fees should not be cut based on losing claims that did not affect the outcome of the case in total. Mr. Ackman, were there ways in which the result here also has beneficial effect for other persons in Mr. Raja's position potentially in terms of their procedural rights vis-a-vis the Taxi Authority? Certainly. I mean, most of the people who represent drivers in the TLC Oath Court are not lawyers. They're representatives like Mr. Raja. He's probably the dean of that bar, so to speak, but there's many others and they're all, I guess, would be subject to summary suspension and disbarment in a case that is brought before the same, is basically judged by the same person who's bringing the case, which in this case is Mr. Burns. So it is a very important point to bring up for all of those people and more important, it's important for the taxi drivers that they represent. Thank you. Thank you very much. I think we have the arguments and we will reserve decision. Thank you both.